896 F.2d 1366
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James J. CUBER, Plaintiff-Appellee,
v.
CAROLINA COMMERCIAL HEAT TREATING, INC., Defendant-Appellant.
 No. 89-3223.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 6, 1989.
Decided: Feb. 20, 1990.
 
 Kenneth Edwards Young (George K. Lyall, Nelson, Mullins, Riley & Scarborough, on brief), for appellant.
 J. Kendall Few, for appellee.
 Before BUTZNER, Senior Circuit Judge, JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This case is before the court on appeal by defendant employer from the decision of the district court, finding that an oral contract of employment embraced within it an obligation to pay a "plant manager" bonus to the employee, and further finding that such bonus was paid only in part for the years involved. A further point of appeal is a challenge to the manner in which the court below computed the damages arising from the failure to pay the appropriate plant manager's bonus.
 
 
 2
 Factually, the pattern presented is not complex. James J. Cuber, the appellee here, plaintiff below [and hereinafter plaintiff, was employed by Carolina Commercial Heat Treating, Inc., the defendant below, appellant here [and hereinafter defendant], as a plant manager at the Fountain Inn, South Carolina, plant of the defendant. This employment was arranged by virtue of an oral contract between the plaintiff and the owner of the defendant.
 
 
 3
 The defendant had arranged a bonus plan for its plant managers, by the terms of which the plant managers were given a "plant manager" bonus computed on the annual profitability of the individual plant, and were also eligible for what was referred to as a corporate bonus, which was computed on the overall profitability of the defendant, which operated several plants. There is no dispute in the evidence that the manager of the Fountain Inn plant was not entitled to the corporate bonus. Only the plant manager's bonus was available to the manager of the Fountain Inn plant.
 
 
 4
 As might be expected, the evidence varied considerably in respect to one critical element of the employment contract. The plaintiff asserts that he was told that he would be paid the Fountain Inn plant manager bonus just as any other plant manager in the system would be paid a bonus. The owner of the defendant, however, contends that the agreement was to pay only a discretionary bonus to the plaintiff. While there was a written bonus incentive plan effective during the period of the plaintiff's employment, it was uncontroverted that he did not see a copy of that plan during the course of his employment.
 
 
 5
 The defendant operated on a fiscal year basis which ended on June 30 of each year. Because the plaintiff had been employed only for part of the first fiscal year of employment, he would not have qualified for the full bonus in that year. The plaintiff admits that he was told in June 1985 (the end of the first fiscal year for which he was employed) that he would not receive the full plant manager bonus for the fiscal year that ended as of June 30 of that year. However, he accepted the bonus payment which was tendered and continued working for the defendant even after he had received a letter in August 1985 confirming the reduced bonus amount and the method of its calculation.
 
 
 6
 The following fiscal year was one in which Cuber was employed throughout the entire year. In June 1986 the plaintiff was told he would receive only 80% of the plant manager bonus for that fiscal year, and the plaintiff accepted that payment and continued on in his employment after he had received a letter in August 1986 concerning the reduced amount of the bonus and its method of computation.
 
 
 7
 Thereafter, the defendant discharged the plaintiff on September 22, 1986, for unsatisfactory performance. At the time of discharge, the plaintiff was offered three months severance pay, but accepted only two months, because Cuber testified that he thought that accepting three months would have required him to waive his claims to the full plant manager bonus.
 
 
 8
 Thereafter, the plaintiff filed suit for payment of the full amount of the bonuses for the fiscal years 1984-85, 1985-86, and 1986-87, in the first and last such years having been employed only for a part of the full fiscal year. In those years, the amounts paid to the plaintiff were in each year less than the plaintiff would have received under the plant manager bonus plan.
 
 
 9
 The case was tried to the district court and the court made a rather detailed set of findings from the evidence which was tendered. The essential finding of the court below was that the plaintiff's version of the employment contract and its terms was more credible than that of the defendant, finding that the plaintiff was promised the plant manager bonus for each of the years in question in an enforceable oral contract. Certainly, the plant manager bonus plan was in effect at the time of the plaintiff's employment, and the court found that it was incorporated by reference into the plaintiff's contract of employment.
 
 
 10
 The factual finding that the plaintiff was entitled to the plant manager bonus for the years in question, or for the portion of years in question in the first and third years, is the critical finding in the case. This is a factual finding and must be reviewed under the "clearly erroneous" standard. As stated in Rule 52 of the Federal Rules of Civil Procedure, the governing determinant in this respect is as follows:
 
 
 11
 Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.
 
 
 12
 The portion of this Rule relating to "clearly erroneous" is further clarified by the Supreme Court where it is stated:
 
 
 13
 "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."
 
 
 14
 Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). In making any judgment as to the clearly erroneous nature of a ruling, it is required that the record be viewed in its entirety.
 
 
 15
 Obviously, the critical finding of the court below had to be drawn from the conflicting evidence of the plaintiff and the defendant's owner as to exactly what the terms of the employment contract might have been. In reviewing the record, it cannot be said that this finding is clearly erroneous. Essentially, decision on this issue came to a question of credibility, as that credibility might be bolstered by other evidence in the record. The decision of the trial court below is not clearly erroneous and must be affirmed.
 
 
 16
 The defendant had argued that a case decided by the Supreme Court of South Carolina was squarely on all fours with the factual pattern in this case, and that it would prevent the plaintiff from recovering because the plaintiff had accepted the lower bonus payments and had received the confirming letters and had continued working thereafter. The defendant argues that such conduct amounts to an estoppel against the plaintiff.
 
 
 17
 In Facelli v. Southeast Marketing Co., 284 S.C. 449, 327 S.E.2d 338 (1985), an at-will employee had continued on in employment after his employer told him that a 40% commission rate he then was operating under would be reduced in the following year. After receiving this information relating to the forthcoming year, the employee continued to work for the employer, and the basic holding of the South Carolina Supreme Court was that the employee had impliedly consented to the change in the terms of the original oral employee contract. In this case, plaintiff contends that he was not notified in any formal way of a change in the bonus in 1985 and in 1986 until after he had worked through the fiscal year to which the bonus applied. The court below held that "Facelli is thus readily distinguishable because [plaintiff] was never told in advance that his bonus would be reduced. Rather he was told after his services had been rendered and his failure to object at the time cannot be said to be an intentional abandonment of a known right." This court can find no error in the ruling of the district court relating to the Facelli case, primarily because of its factual distinction.
 
 
 18
 On the issue of the calculation of damages, the court below took into account the time which plaintiff worked during fiscal year 1985, finding that the plaintiff had been employed only nine months in that fiscal year. The court therefore based the bonus for fiscal year 1985 on 9/12ths of the profits of the Fountain Inn plant for that fiscal year. This court finds that this is a reasonable approach to the calculation of damages, though it must be conceded that the damages could have been calculated on some other basis. However, such a matter is committed to the sound discretion of the trial court, and this court finds no abuse of discretion in calculating the damages in this fashion.
 
 
 19
 For the reasons set out, the judgment of the court below is
 
 
 20
 AFFIRMED.